IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY M. REIFF and | : | |
| DOMINIQUE REIFF | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GAF MATERIALS CORP. | : | No. 10-1142 |
| Defendant. | : | |

## MEMORANDUM

Schiller, J.                                                                                              August 6, 2010

In this diversity action, Plaintiffs Jeffrey and Dominique Reiff are suing Defendant GAF Materials Corp. ("GAF") stemming from Defendant's sale of and maintenance of a roofing system on Plaintiffs' home. Currently before the Court is Defendant's Motion for Partial Dismissal of Claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants that motion.

I.   BACKGROUND

According to Plaintiffs' Complaint, Defendant GAF, a New Jersey corporation, was in the business of manufacturing, designing, selling, and producing roofing materials, including the "Tru Slate 2.0 Roof System," as well as materials and accessories necessary for the installation of said roofing system. (Compl. ¶ 5.) Plaintiffs are citizens of Pennsylvania and also own a home in Ventnor, New Jersey. (*Id.* ¶¶ 1, 8.) In the summer of 2007, Plaintiffs decided to place a slate roof on their New Jersey home. (*Id.* ¶¶ 8–9.) They retained a general contractor, JP Leeds, Jr. Builder, Inc. ("Leeds"), which in turn contracted with Defendant to purchase a Tru Slate 2.0 Roof System. (*Id.* ¶¶ 9–10.) Defendant strongly recommended that Leeds retain Select Roofing & Siding LLC

("Select Roofing") to install the roof, claiming that Select Roofing had significant experience and expertise in installing the roofing system in coastal areas where roofs were often subject to high winds and stormy conditions. (*Id.* ¶¶ 11–12.) Leeds retained Select Roofing, which installed the roofing system in or about the middle of October 2007, at a cost to Plaintiffs of $36,295.12. (*Id.* ¶ 14.)

On or about May 12, 2008, a severe storm struck the New Jersey coast, and as a result, dozens of slate tiles became dislodged from Plaintiffs' Tru Slate roof. (*Id.* ¶ 15.) One slate tile damaged the exterior of a neighboring property, while other slate tiles broke a window and landed on a second floor deck of the same neighboring property. (*Id.*) Plaintiffs contacted GAF to request its assistance in repairing the roof and ensuring that this did not happen again. (*Id.* ¶ 17.)

On June 25, 2008, Defendant's TruSlate Business Manager told Plaintiffs that GAF was committed to solving any problems that existed with the Tru Slate Roofing System, and intended to use Plaintiffs' property as a "model" to show to prospective purchasers of the Tru Slate Roofing System. (*Id.* ¶¶ 18–19.) Subsequently, GAF sent a team of technicians and certified slate roof installers to travel to Plaintiffs' home in order to remedy the problems with the Tru Slate Roofing System. (*Id.* ¶ 21.) Afterwards, GAF assured Plaintiffs that the roof was now in excellent condition. (*Id.* ¶ 22.) Subsequently, in April, 2009, Plaintiffs traveled to their property in Ventnor and discovered that a significant number of additional slate tiles had blown off the roof and were missing; that a number of leading edge tiles and top ridge tiles were loose and not well-secured; that an additional 4 to 6 mid roof tiles were missing; and it appeared that other tiles were about to blow off of the roof. (*Id.* ¶ 23.) Plaintiffs emailed GAF about this issue on April 7, 2009. (*Id.* ¶ 24.) In or around June 2009, Herb Van Gent, Defendant's Area Manager-East for Field Operations

conducted an inspection of Plaintiffs' roofing system. (*Id.* ¶ 27.) Mr. Van Gent appeared at the subject premises together with a Tru Slate Roofing installer and met with Mr. Reiff. (*Id.* ¶ 28.) The installer climbed on the roof and hammered a few nails. (*Id.*) Thereafter, Mr. Van Gent advised Mr. Reiff that the problem was not serious and that GAF would resolve it, but no further action was taken. (*Id.* ¶ 29.) However, since April 2009, Plaintiffs' Tru Slate Roofing System has continued to deteriorate, with slate tiles disappearing on a continuing basis. (*Id.* ¶ 34.) As a result of these problems, Plaintiffs believe their only option is to have their Tru Slate Roofing System removed and install a conventional roof on their property, which they estimate would cost more than $200,000. (*Id.* ¶ 36.)

Plaintiffs filed this lawsuit on March 16, 2010, charging Defendant with negligence, breach of warranties, and misrepresentation. On April 16, 2010, Defendant filed a motion to dismiss Plaintiffs' negligence and misrepresentation claims under Federal Rule of Civil Procedure 12(b)(6), saying those claims are barred by New Jersey's economic loss rule.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding

a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must then make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id*.

## III. DISCUSSION

New Jersey's economic loss rule precludes tort recovery for economic loss suffered by reason of a defective product if the only damage plaintiff suffered is to the product itself. *See Alloway v. General Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997).[1] Plaintiffs argue that the economic loss rule does not bar their negligence and misrepresentation claims because they allege that Defendant's roofing system has caused damage to more than just the product itself, but has also harmed an adjacent structure. The economic loss rule concerns itself with the nature of the plaintiff's loss, not with damages sustained by non-parties. Nowhere in Plaintiff's Complaint is there any indication that Plaintiffs have paid for their neighbors' injuries or have otherwise been assigned their neighbors' legal claims. The only damage Plaintiffs allege is to their roof. Plaintiffs argue that their Complaint alleges that their home "does not have a complete roof . . . thus implying the fact of leakage and water damage to the structure itself." (Pls.' Resp. to Def.'s Mot. to Dismiss at 7 (citing Compl. ¶ 35).) While a court reviewing a motion to dismiss must read a complaint in the light most favorable to the plaintiff, it need not read in to the complaint allegations that were not made. Plaintiffs have not alleged any damage to their home and the Court will not infer any such damage without an allegation. Speculation about the possibility of future personal injury or damage to Plaintiffs' other property is also not enough to circumvent the economic loss rule. *See Morris v. Osmose Wood Preserving*, 667 A.2d 624 (Md. 1995). The economic loss doctrine applies with equal force to misrepresentation claims. *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 550–51 (D.N.J. 1998) (collecting cases). Since the only damage Plaintiffs allege to have suffered is to the product they purchased, New Jersey's economic loss doctrine bars their negligence and misrepresentation

---

[1] Both parties appear to assume that New Jersey law applies and so will the Court.

actions. Plaintiffs' lawsuit can proceed as a breach of warranty claim, but not as a tort claim.

**IV.     CONCLUSION**

For the reasons stated above, Plaintiffs' negligence and misrepresentation claims will be dismissed. Only their breach of warranty claim remains. An appropriate Order will be docketed separately.